**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 10, 2023**

# In the Court of Appeals of Georgia

A22A1677. THOMAS v. THE STATE.

DILLARD, Presiding Judge.

Tommy Lamar Thomas appeals the trial court's denial of his special demurrer to several counts of the State's indictment against him on various charges, including weapon-related charges. Specifically, Thomas argues that two counts of the indictment lack sufficient detail and thus are too vague when describing the firearms he allegedly unlawfully possessed. For the reasons set forth *infra*, we agree with Thomas and reverse.[1]

The record shows Thomas was indicted by a Floyd County grand jury on nine different counts, including five weapon-related counts. Counts Two and Three of the

---

[1] Oral argument was held on October 5, 2022, and is currently archived on the Court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A22A1677 (Oc. 5, 2022), available at https://vimeo.com/758575232.

indictment charged Thomas with possession of illegal weapons. And several months later, following arraignment, Thomas filed a special demurrer to those counts of the indictment, arguing that its descriptions of the weapons were too vague and thus did not provide sufficient detail to apprise him of what he must be prepared to defend at trial. More precisely, in Count Two of the indictment, Thomas was charged with possession of an illegal weapon in violation of OCGA § 16-11-123 in that, "on or about the 25th day of November, 2021, [he] did knowingly have in his possession a sawed-off rifle having a barrel length of less than 16 inches and an overall length of less than 26 inches, the acts in this count being separate and distinct from any other count in this indictment . . ."[2] Likewise, in Count Three, he was charged with another violation of OCGA § 16-11-123, in that, "on or about the 25th of November, 2021, [he] did knowingly have in his possession a sawed-off shotgun having a barrel length of less than 18 inches and an overall length of less than 26 inches, the acts in this count being separate and distinct from any other count of this indictment . . ."[3]

---

[2] *See* OCGA § 16-11-123 ("A person commits the offense of unlawful possession of firearms or weapons when he or she knowingly has in his or her possession any sawed-off shotgun, sawed-off rifle, machine gun, dangerous weapon, or silencer, and, upon conviction thereof, he or she shall be punished by imprisonment for a period of five years.").

[3] *See id.*

2

Following a hearing on the matter, the trial court denied the special demurrer on the foregoing counts but granted Thomas's petition for a certificate of immediate review. We granted Thomas's application for interlocutory appeal, and this appeal follows. And once again, as to Counts Two and Three of the indictment, Thomas contends the descriptions of the firearms at issue are too vague to withstand a special demurrer. We agree.

In filing a special demurrer, an accused "claims not that the charge in an indictment is fatally defective and incapable of supporting a conviction, but rather that the charge is imperfect as to form or that the accused is entitled to more information."[4] And when we review an indictment on interlocutory appeal prior to a trial, we must apply the rule that "a defendant who has timely filed a special demurrer

---

[4] *Hairston v. State*, 322 Ga. App. 572, 574 (2) (745 SE2d 798) (2013) (punctuation omitted); *see Jones v. State*, 289 Ga. 111, 115 (2) (c) (709 SE2d 773) (2011) ("A defendant is entitled to be tried on a perfect indictment and may file a special demurrer seeking greater specificity or additional information concerning the charges contained in the indictment."); *Marshall v. State*, 361 Ga. App. 357, 367 (864 SE2d 469) (2021) (noting that "a special demurrer challenges the sufficiency of the form of the indictment"); *Kaufman v. State*, 344 Ga. App. 347, 354 (810 SE2d 585) (2018) (noting that "a special demurrer merely objects to the form of an indictment and seeks more information or greater specificity about the offense charged") (citation & punctuation omitted)).

is entitled to an indictment perfect in form as well as substance."[5] To that end, we review a trial court's ruling on a special demurrer *de novo*.[6]

Importantly, in order to withstand a special demurrer, an indictment need not contain every detail of the crime; but it *must* state the essential elements of the charged offense *and* allege the underlying facts in enough detail to sufficiently apprise the defendant of what he or she must be prepared to defend against at trial.[7] The purpose of the indictment, then, is to "allow [the] defendant to prepare his

---

[5] *Newsome v. State*, 296 Ga. App. 490, 491 (675 SE2d 229) (2009); *accord State v. Leatherwood*, 326 Ga. App. 730, 731 (757 SE2d 434) (2014); *State v. Delaby*, 298 Ga. App. 723, 724 (681 SE2d 645) (2009); *see also City of Peachtree City v. Shaver*, 276 Ga. 298, 301 (578 SE2d 409) (2003) ("A defendant is entitled to a charging instrument that is perfect in form as well as substance, and the proper method to challenge the form of such instrument is a special demurrer." (citation omitted)).

[6] *Leatherwood*, 326 Ga. App. at 731; *State v. Pittman*, 302 Ga. App. 531, 531 (690 SE2d 661) (2010).

[7] *See United States v. Debrow*, 346 U.S. 374, 376 (74 SCt 113, 98 LE 92) (1953) ("The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." (punctuation omitted)); *Sanders v. State*, 313 Ga. 191, 195 (3) (869 SE2d 411) (2022) (same); *Leatherwood*, 326 Ga. App. at 732-33 (same).

defense intelligently *and* to protect him from double jeopardy."[8] As the Supreme Court of the United States has explained, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."[9] Nevertheless, this recitation "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."[10]

Here, the State's inclusion of "separate and distinct from any other count of this indictment" suggests the weapons at issue in Counts Two and Three are different from the weapons referenced in the other weapon-related counts of the indictment

---

[8] *Sanders*, 313 Ga. at 195 (3) (punctuation omitted) (emphasis supplied); *accord Jones v. State*, 289 Ga. 111, 116 (2) (c) (709 SE2d 773) (2011); *State v. English*, 276 Ga. 343, 346 (2) (a) (578 SE2d 413) (2003); *see* U.S. CONST. amend. V (". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . ."); GA. CONST. Art. 1, § 1, ¶ XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of a mistrial.").

[9] *Hamling v. United States*, 418 U.S. 87, 117 (II) (94 SCt 2887, 41 LE2d 590) (1974) (punctuation omitted).

[10] *Id*. at 117-18 (II) (punctuation omitted); *accord United States v. Hess*, 124 U.S. 483, 487 (8 SCt 571, 31 LE 516) (1888).

that *do* provide additional details by which to identify the firearm, such as the make and model.[11] Indeed, Counts Two and Three merely track the language of OCGA § 16-11-123 by referring to each weapon as a "sawed-off shotgun" and a "sawed-off rifle" and providing an approximate measurement of each weapon's barrel and overall length in conformity with OCGA § 16-11-121.[12]

As a result of the foregoing, Thomas contends the State has not done enough to inform him of the specific offenses for which he is charged, and urges us to apply

---

[11] *See State v. Williams*, 347 Ga. App. 183, 184 (818 SE2d 256) (2018) (explaining, in case involving indictment with 48 separate counts of sexual exploitation of children, that "[e]ach count of the indictment described an image depicting a minor engaged in specific sexually explicit conduct separate and distinct from any other count alleged" (punctuation omitted)). In this case, unlike Counts Two and Three, Count One of the indictment—charging Thomas with criminal use of a firearm with an altered serial number—does not contain the "separate and distinct language" and is later incorporated by reference into Count Nine, which charges Thomas with possessing a firearm as a convicted felon and describes that firearm as having no serial number and being a "Hatfield SGL 12 gauge single shot shotgun."

[12] *See* OCGA § 16-11-121 (4) ("'Sawed-off rifle' means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder; and designed or redesigned, made or remade, to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifle bore for each single pull of the trigger; and which has a barrel or barrels of less than 16 inches in length or has an overall length of less than 26 inches."); OCGA § 16-11-121 (5) ("'Sawed-off shotgun' means a shotgun or any weapon made from a shotgun whether by alteration, modification, or otherwise having one or more barrels less than 18 inches in length or if such weapon as modified has an overall length of less than 26 inches.").

6

to these unlawful-possession-of-a-weapon counts the same standard applied to indictments for the unlawful possession of other items (*e.g.*, stolen property)—thus requiring the unlawfully possessed weapons to be described with particularity.[13] We agree the reasoning of those cases should apply in this (similar) context, and, as a result, that such particularity is required in this case. So, in order to intelligently prepare a defense and protect against double jeopardy, the weapons referred to in Counts Two and Three must be described with greater particularity—such as their appearance (*e.g.*, color), make, model, caliber, exact barrel measurement, serial number, and any other distinguishing characteristics.[14]

---

[13] *See Walthour v. State*, 114 Ga. 75, 75 (39 SE 872) (1901) ("When, as in larceny, personal chattels are the subject of an offense, they must be described specifically by the names usually appropriated to them, and the number and value of each species or particular kind of goods stated." (punctuation omitted)); *Glass v. State*, 26 Ga. App. 157, 157 (106 SE 13) (1921) (Luke, J. dissenting) ("But where the indictment charges simple larceny, or a substantially similar offense, it must, in addition to using the language of the statute, describe the subject–matter of the offense with sufficient certainty to individualize the transaction, reasonably inform the defendant of the instance meant, enable the jury to say whether the indictment and the evidence relate to the same chattel, and, in the event of a subsequent prosecution for the same offense, put the court in position to determine the identity of the subject–matter of the two indictments." (relying upon *Walthour* and others)).

[14] *See Newsome v. State*, 296 Ga. App. 490, 493 (2) (675 SE2d 229) (2009) ("It is difficult, if not impossible, to prepare a defense to a criminal trespass charge, or to protect against double jeopardy on such a charge, if a defendant is not sufficiently apprised of the particular property he or she is alleged to have damaged or interfered

In reaching this conclusion, we are unpersuaded by the State's suggestions that Thomas need only look to the pretrial discovery to learn additional details about the firearms referenced in Counts Two and Three. Indeed, the State described firearms with greater particularity elsewhere in the indictment, and then curiously noted in Counts Two and Three that the generally described firearms referenced in those counts were "separate and distinct" from the other counts.[15] We are likewise

---

with."); *Simpson v. State*, 100 Ga. App. 726, 726 (2) (112 SE2d 314) (1959) ("A description in an indictment merely that the property stolen is the property of [the victim] and consists of 'no. 4 and no. 6 hard drawn bare copper wire of the value of $35.00' which fails to specify weight, quantity, location, appearance, or anything to distinguish it from copper wire of the types in question generally is insufficient to withstand special demurrer."); *Mathis v. State*, 27 Ga. App. 229, 229 (107 SE 629) (1921) (Syllabus by the Court) ("An accusation which charges the larceny of '2 1/2 gallons of syrup of the value of $2, and of the property of [the named victim],' is not sufficient to withstand a special demurrer which attacks it for the insufficiency of the description of the thing alleged to have been stolen. The defendant, if he desired, was entitled to know what kind of syrup he was charged with stealing."); *Bright v. State*, 10 Ga. App. 17, 17 (72 SE 519) (1911) ("The marks, quality, or kind of the property must be incorporated in the description, or the transaction in some way individualized."). *Cf. Tucker v. State*, 112 Ga. App. 622, 624 (145 SE2d 751) (1965) ("[W]e hardly see how [the indictment] could have been made more definite when . . . it was charged that the [stolen] hubcaps were from a 1965 Chevrolet car, from the particular model known as the Impala, of the Supersport type and made of chrome.").

[15] *See supra* note 9 & accompanying text.

8

unpersuaded by the State's reliance on *Blockburger v. United States*[16] to assert that—because it is charging Thomas with offenses related to only two firearms (something that is not at all clear from the indictment)—subsequent prosecution would be barred. As explained *supra*,

> [t]he true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.[17]

For all these reasons, the indictment fails this sufficiency test because it does not apprise Thomas of what he must be prepared to defend against as to Counts Two

---

[16] 284 U.S. 299 (52 SCt 180, 76 LE 306) (1932) (establishing a standard by which to determine whether double jeopardy bars punishment for two different offenses based upon the same conduct); *see Stepp v. State*, 286 Ga. 556, 557 n.2 (690 SE2d 161) (2010) ("[U]nder *Blockburger*, the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one for purposes of double jeopardy, is whether each provision requires proof of a fact which the other does not." (punctuation omitted)); *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006) (adopting the *Blockburger* "required evidence" test).

[17] *Debrow*, 346 U.S. at 376; *accord Sanders*, 313 Ga. at195 (3); *Leatherwood*, 326 Ga. App. at 732-33.

and Three—*i.e.*, it fails to describe with particularity the firearms he allegedly unlawfully possessed and thus does not show "with accuracy to what extent he may plead a former acquittal or conviction" should other proceedings be taken against him for a similar offense.[18] Accordingly, we reverse the trial court's denial of Thomas's special demurrer as to Counts Two and Three of the indictment.[19]

    *Judgment reversed. Mercier and Markle, JJ., concur.*

---

[18] *Cf. United States v. Smallwood*, No. 1:13-CR-381-1-TCB, 2014 WL 3519195, at *25 (II) (D) (N.D. Ga. July 16, 2014) (denying motion to dismiss or, in the alternative, motion for bill of particulars with regard to firearm-possession count of indictment when defendant could not explain how indictment failed "to provide sufficient factual detail to enable him to rely upon a judgment under the indictment as a bar against double jeopardy for a subsequent prosecution of the same offense, as the indictment clearly identifies each firearm by make, model, type, and serial number"); *see supra* note 12 & accompanying text.

[19] The quashing of an indictment "merely bars trial on the flawed indictment; it does not bar the State from reindicting the defendant." *Young v. State*, 327 Ga. App. 852, 858 (5) (b) (i) (761 SE2d 801) (2014). Indeed, with special demurrers (which must be brought before jeopardy attaches), the State can "usually re-indict before trial unless the statute of limitations for the crimes with which the defendant was charged bars the prosecution . . . or the re-indictment is prohibited under OCGA § 17-7-53.1, which disallows prosecution after two indictments charging the same offenses have been quashed." *State. v. Heath*, 308 Ga. 836, 840 (843 SE2d 801) (2020).